IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DALE A. GUILFOIL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 16-363-CFC |
| CONNECTIONS, | ) ) ) |
| Defendant. | ) ) |

Dale A. Guilfoil, Central Violation of Probation Center, Smyrna, Delaware. Pro Se Plaintiff.

Dana Spring Monzo, Esquire, and Lindsey E. Imbrogno, Esquire, White & Williams, Wilmington, Delaware. Counsel for Defendant.

**<u>MEMORANDUM OPINION</u>**

September 4, 2019
Wilmington, Delaware

**CONNOLLY, U.S. District Judge**

## I. INTRODUCTION

Plaintiff Dale A. Guilfoil ("Plaintiff"), an inmate at the Central Violation of Probation Center in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3) Plaintiff was housed at the Sussex Correctional Center ("SCI") in Georgetown, Delaware when he commenced this case.[2] Before the Court are the parties' cross-motions for summary judgment. (D.I. 66, 70) The matters have been fully briefed.

## II. BACKGROUND

Plaintiff began his incarceration as a pretrial detainee following his arrest on July 6, 2014.[3] *See Guilfoil v. State*, 135 A.3d 78 (Del. 2016) (table). He has a spinal cord stimulator implanted in his lower back and uses a cane. (D.I. 3 at 5; D.I. 68 at 307-308) During intake at SCI, Plaintiff informed the nurse about the stimulator, that he uses a cane, and was on a pain management regimen. (D.I. 3 at 5; D.I. 68 at 159-178) Medical personnel ordered pain medication for Plaintiff. (D.I. 68 at 306-307; D.I. 68-1 at 48)

---

[1] When bringing a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] During the pendency of this action Plaintiff was released from prison. (See D.I. 57, 62) Recently he was reincarcerated. (*See* D.I. 73)

[3] As explained by the Third Circuit, the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor*, 399 F. 3d 150, 166 (3d Cir. 2005).

Plaintiff alleges that on July 14, 2014, he told a physician that he needed to charge the stimulator's battery and, on July 22, 2014, told a physician that he needed a stimulator charger. (D.I. 3 at 5) Plaintiff alleges that he was told it was his responsibility to charge the battery and that he needed approval from security. (*Id.* at 5-6) Plaintiff's public defender stepped in to assist him with the issue. (*Id.* at 6) On August 5, 2014, Plaintiff was called to the medical office to use a borrowed charger, but the battery would not take a charge. (*Id.*)

In the meantime, pain medication was ordered for Plaintiff and initially he received it, but it stopped in late July 2014. (D.I. 3 at 6; D.I. 68-1 at 40-48) As alleged, when Plaintiff filed the Complaint in May 2016, he received medication sporadically. (D.I. 3 at 6) In some instances it was not given, and on occasion it was not available because Plaintiff did not timely request medication refills. (D.I. 67, Ex. C at ¶ 9, Ex. F at 65-67; D.I. 68-1 at 40-48)

In February of 2015, Plaintiff saw a private pain management specialist and had a CT scan of his back. (D.I. 68-2 at 41-42, 73-74) Plaintiff was seen by Connections medical personnel for follow-up, administered trigger point injections and his pain medication was increased. (D.I. 68 at 303) Plaintiff continued to see a pain management specialist in 2015. (D.I. 68 at 301-302, 430-432; D.I. 68-2 at 44, 75-77). In addition, Connections medical personnel referred him to private orthopaedic and neurosurgical specialists who determined that Plaintiff was not a surgical candidate and, instead, recommended epidural injections and physical therapy. (D.I. 68 at 299, D.I. 68-2 at 30-39, 78-80)

Plaintiff's criminal trial took place in June 2015. He found guilty on June 8, 2015, and sentenced on July 28, 2015.[4] *See Guilfoil*, 135 A.3d 78; *Guilfoil v. Johnson*, Civ. No. 16-291-CFC (Del. 2016) at D.I. 3, ¶ 2(b).

In 2015, Plaintiff attended physical therapy, was instructed on home exercises, and received the maximum dose allowed for pain medications. (D.I. 68 at 293-297; D.I. 68-1 at 4973) Toward the end of 2015, medical providers decreased the dose of opioid medication Plaintiff was administered because he had exceeded the maximum dose. (D.I. 68 at 297-298) Plaintiff was told by medical providers that they could prescribe additional non-opioid pain analgesics if the decreased opioid medication dosage affected his pain relief. (*Id.*)

In 2016, Plaintiff saw a private pain management specialist at the Sussex Pain Relief Center fifteen times and received multiple epidural injections in his back. (D.I. 68-1 at 294-297; D.I. 68-2 at 23-38, 49-56) Plaintiff continued to be administered pain medications including opioids, muscle relaxers, nerve medications, and sleeping pills. (D.I. 68-1 at 74-109) Plaintiff commenced this action in May 2016.

Plaintiff fractured his foot in 2017. (D.I. 68 at 278-282) He received daily care for approximately two weeks following the injury that included immobilization of the foot by providing Plaintiff with a wheelchair, wrapping the foot, anti-inflammatories, and ice. (*Id.*) The treatment provided Plaintiff remained the same following the September 21, 2016 x-ray that revealed fractures without significant displacement. (*Id.* at 278)

---

[4] *See* n.3.

On April 1, 2017, Delaware Health and Social Services ("DHSS") issued new guidelines for prescribing opioids for patients. (D.I. 67, Exs. C, D) The guidelines require that all patients who are prescribed opioid medications must undergo periodic medical surveillance and sign a treatment agreement. (*Id.*) In addition, physicians must meet certain documentation requirements for patients who are prescribed opioid medications. (*Id.*) The new guidelines recommend the use of alternative, non-opioid treatments when possible. (*Id.*)

Defendant issued its own guidelines in accordance with the DHSS guidelines. (D.I. 67, Exs. C, E) Under Defendant's guidelines, each medical care provider within the Delaware Department of Correction ("DOC") may adopt their own practice patterns utilizing their clinical judgment to treat patients so long as they are in compliance with the guidelines of Defendant and DHSS guidelines. (*Id.* at Ex. C) In accordance with both guidelines, SCI medical care providers chose to wean inmate/patients off opioids if medically appropriate. (*Id.*)

On October 4, 2017, SCI Medical Director Curtis Harris, M.D. ("Dr. Harris") counseled Plaintiff that his prescription for Tramadol would slowly decrease over the following two to three weeks and advised Plaintiff that he would receive alternative pain management treatment including physical therapy and consultations with an outside pain management specialist. (*Id.*) Plaintiff was weaned off Tramadol from October 4, 2017 through November 19, 2017 and prescribed alternative medication. (*Id.*) He was prescribed anti-inflammatory medication and seen by outside physician Ganesh Balu, M.D. ("Dr. Balu") for a consultation and recommendations for pain management. (*Id.* at

228-229) Dr. Balu recommended a sacroiliac (*i.e.*, SI) joint injection and surgical removal of the spinal cord stimulator after Plaintiff's release from prison. (*Id.* at 227) Plaintiff had a follow-up visit with Dr. Balu and received the SI joint injection. (*Id.* at 221-222)

As of 2018, Plaintiff's medication administration report indicates that Plaintiff receives numerous pain medication including Neurontin, Mobic, Lidocaine, Elavil, and Robaxin. (D.I. 67, Ex. C; D.I. 68-1 at 169-175) According to Christopher Moen, M.D. ("Dr. Moen"), Defendant's Chief Medical Officer, the medications were appropriate alternatives to Tramadol. (D.I. 67, Ex. C)

Plaintiff was released from custody on October 11, 2018. (D.I. 57) Plaintiff was reincarcerated on October 30, 2018 and released on November 20, 2018. (D.I. 62) He was again incarcerated on May 30, 2019, and will remain incarcerated for one year. (D.I. 73)

The Complaint alleges that Plaintiff submitted numerous grievances regarding replacement of the stimulator battery, was told he would receive medication without interruption while at SCI, and that he would not receive surgery to replace the battery. (D.I. 3 at 6; D.I. 67-1 at 61, 64, 66, 68) Plaintiff asks the Court to decide who is responsible for paying for the surgery that is required to change the battery in the spinal cord stimulator. (D.I. 3 at 8) He also seeks compensatory and punitive damages. (*Id.*)

The Complaint named Defendants Correct Care Solutions ("CCS"), the DOC, and Connections ("Connections").[5] CCS and the DOC were dismissed when the Court screened the Complaint. (D.I. 8)

Defendant moves for summary judgment on the grounds that: (1) Plaintiff has failed to present any evidence that it maintained an unconstitutional policy, practice, or custom that cause Plaintiff harm; (2) Plaintiff does not have a valid claim for relief under "Federal Statutes"; (3) Plaintiff is not entitled to punitive damages. Plaintiff moves for summary judgment on the grounds that: (1) a pretrial detainee's right to medical care is protected by the Due Process clause; and (2) Defendant's policy that detainees and prisoners must provide any medical device that is needed for their treatment is unconstitutional.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record,

---

[5] Connections took over general healthcare provider responsibilities for Delaware's inmate population on July 1, 2014. The general healthcare contract with CCS expired on June 30, 2014. *See* http://doc.delaware.gov/news/pdfsl14press0625.pdf (last visited Sept. 10, 2016).

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at

249-50 (internal citations omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252. The same standards and burdens apply on cross-motions for summary judgment. See Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987

## IV. DISCUSSION

As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment affords Plaintiff protection for his medical needs claim. Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). See also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). When evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in Estelle v. Gamble, 429 U.S. 97 (1976), as analyzed under the Eighth Amendment for a sentenced inmate. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). To evaluate a medical needs claim, the court determines if there is evidence of a serious medical need and acts or omissions by prison officials indicating deliberate indifference to those needs. Id. at 582.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05. However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Defendant is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584 (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C.

9

§ 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Assuming the acts of Defendant's employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. See *Natale*, 318 F.3d at 584 (citations omitted). "Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict." *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. at 1132 (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Defendant contends that summary judgment is appropriate on its behalf because there is no evidence of an unconstitutional policy, practice, or custom that allegedly violated Plaintiff's rights. Through written interrogatories, Plaintiff was asked to identify any policy, practice or custom maintained by Defendant that Plaintiff contends posed an unreasonable risk of harm to him or other inmates and that caused the alleged delay or denial of medical treatment. (D.I. 67-1 at 103) Plaintiff responded: "The practice of

custom and policy that detentionees and inmates brought into [SCI] have to get own medical devices to treat their handicap. As [Plaintiff] was told that it was [his] responsibility to get the battery charger and control unit to keep the battery in the stimulator functional." (D.I. 67-1 at 89) Plaintiff referred to another inmate who had a spinal cord stimulator "that is on, but [the inmate] has been denied the benefit to use the control to set [the device] at a comfortable setting." (*Id.* at 90) Plaintiff also referred to a "policy" of not x-raying inmates who "show[ ] signs of broken bones." (*Id.*)

Plaintiff's response does not support his position of an unconstitutional policy, practice or custom. Plaintiff refers to one inmate who also had a spinal cord stimulator. However, that inmate's stimulator was functional and the complaint was that the inmate was not allowed to set the device at the setting he desired. Plaintiff's complaint is that he was responsible for obtaining a battery and/or battery charger for his unit. The two complaints are quite different. Plaintiff received pain medication in lieu of use of the stimulator and it appears the inmate Plaintiff refers to was used a stimulator in lieu of pain medication.

The second "policy" Plaintiff refers to concerns x-rays for inmates who have signs of a fracture. Two things come to mind. First, the record indicates that Plaintiff's foot was x-rayed and treatment rendered him did not change following the x-ray. Second, the Complaint contains no allegations regarding fractures, x-rays, and treatment. Indeed, Plaintiff fractured his foot after the he commenced this action. This second "policy" lends no support to Plaintiff's claim.

Plaintiff's five inch high, 1,128 page medical record is replete with consistent treatment provided for chronic pain management. There is no evidence of record that any individual medical service provider violated Plaintiff's constitutional rights or were deliberately indifferent to Plaintiff's serious medical needs. To the contrary, the record shows just the opposite. Medical providers made decisions to treat Plaintiff's back pain with medications, injections, physical therapy, and visits to outside specialists instead of referring him for surgery to replace his spinal cord stimulator. While Plaintiff may have disagreed with the medical care provided, he had no right to choose a specific form of medical treatment, so long as he was provided reasonable treatment. Notably, in Dr. Moen's affidavit, he opines that while Plaintiff was housed at SCI, his conditions were monitored during chronic care visits and treated with reasonable and medically appropriate care. (D.I. 67-1 at ¶¶ 2, 11) Other than argument, Plaintiff produced nothing to refute Dr. Moen's opinion.

Given the treatment provided Plaintiff, the lack of evidence that prison medical staff were deliberately indifferent to Plaintiff's serious medical needs, and Dr. Moen's unrefuted opinion, Defendant cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiff's rights. Therefore, the Court will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment. The record does not support a finding that Defendant maintained an unconstitutional policy, custom, or practice that caused harm to Plaintiff.

Finally, to the extent Plaintiff attempts to raises claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.* and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. §§ 791, *et seq.*, the claims fail. Nether the ADA nor the Rehab Act create a cause of action for prisoners who are challenging their medical care. *See, e.g., Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (alleged denial of medical treatment for an inmate's disabilities are not encompassed by the prohibitions of the ADA); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions ... do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."). The Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment as to the ADA and Rehab Act claims to the extent Plaintiff intended to raise such claims.

## V. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 66); and (2) deny Plaintiff's motion for summary judgment (D.I. 70).

An appropriate Order follows.